# Exhibit A - Policy



**ALPS**
Property & Casualty Insurance Company

**HOME OFFICE ADDRESS:**
111 N. Higgins, Suite 200
Missoula, MT  59802

***PHONE:***
(800) 367-2577

**MAILING ADDRESS:**
PO Box 9169
Missoula, MT  59807-9169

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## POLICY DECLARATIONS

NOTICE: THE POLICY IS A CLAIMS MADE AND REPORTED POLICY. NO COVERAGE EXISTS UNDER THE POLICY FOR A CLAIM WHICH IS FIRST MADE AGAINST THE INSURED OR FIRST REPORTED TO THE COMPANY BEFORE OR AFTER THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE UNDER THE POLICY WITH YOUR INSURANCE ADVISOR.

POLICY NUMBER:          ALPS17910- 2

Item 1 – Named Insured:      Fillmore Spencer LLC
          Address:        3301 N. University Ave.
                          Provo, UT 84604

Item 2 – Name of Each Insured Attorney:                          Retroactive Date
                See Attached

Item 3 – Policy Period:
                        Effective Date:        05/24/2016        12:01 AM at the address stated in Item 1.
                        Expiration Date:       05/24/2017
                        Loss Inclusion Date:   08/17/1998

Item 4 – Limit of Liability:    $2,000,000      *Each Claim
                                $4,000,000       Aggregate
                                *This means "all claims arising out of the same, related or continuing professional services."

Item 5 – Deductible:      $25,000      Each Claim

Item 6 – Annual Premium:      ▊▊▊▊

Item 7 – Endorsements attached at inception of the policy form: LPL STD (07-14)

Signature Page                    UT Amendatory              Prior Acts Coverage Endorsement
First Dollar Defense Endorsement  Excluded Entity(s)         Excluded Matter(s)

All current and previously submitted application forms delivered to the Company are made a part of the policy. The Named Insured may obtain a copy of all application forms by submitting a written request to the Company.

Countersigned by:  _Mark Rabe_____         Date:___June 15, 2016___
                   Authorized Representative



**ALPS**
Property & Casualty Insurance Company

The retroactive coverage date applies to each attorney as follows for the Lawyers Professional Liability Insurance (LPLI):

| Name | Retroactive Coverage Date |
|------|---------------------------|
| Adams, Levi S. | 10/13/2010 |
| Alisa, Joseph Z. | 01/14/2012 |
| Card, Scott P. | 10/01/2002 |
| Dodd, Aaron P. | 09/05/2005 |
| Fillmore, William L. | 08/17/1998 |
| Howell, Matthew R. | 12/24/2004 |
| Madsen, Barnard N. | 09/28/1998 |
| North, Kara H. | 06/06/2011 |
| O'Brien, Stephanie L. | 08/01/2009 |
| Reichman, Peter | 05/11/2015 |
| Sheffield, Richard W. | 11/01/1999 |
| Spencer, Randall K. | 07/16/1999 |
| Stubbs, Jared B. | 06/01/2014 |
| Stubbs, Mark D. | 11/01/2001 |
| Vance, Simeon | 08/17/2015 |



Property & Casualty Insurance Company

---

*LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY*

---

Named Insured: Fillmore Spencer LLC

Policy No. <u>ALPS17910- 2</u>

Effective Date: <u>5/24/2016</u>

# SIGNATURE PAGE

IN WITNESS WHEREOF, ALPS Property & Casualty Insurance Company has caused this **Policy** to be executed and attested, but this **Policy** shall not be valid unless countersigned by a duly authorized representative of ALPS Property & Casualty Insurance Company.

[_____]
[David A. Bell, President]

[_____]
[Bradley D. Dantic, Secretary]



## ALPS
Property & Casualty Insurance Company

---

*LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY*

---

Named Insured: Fillmore Spencer LLC      Policy No. <u>ALPS17910- 2</u>

Effective Date: <u>5/24/2016</u>

### PRIOR ACTS COVERAGE ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

**2.      DEFINITIONS**

Sections 2.15.2 and 2.15.3 are amended to read in their entirety as follows:

2.15.2 An **Attorney** who is, at the time a **Claim** is first made, or who was, at the **Effective Date** of the **Policy**, a partner, stockholder or employee of the **Named Insured**, and who is or was identified in Item 2 of the Declarations, provided that the requirements of this **Policy** concerning amendment of Item 2 have been complied with, and solely for **Claim**s arising from such **Attorney**'s **Professional Services** performed on or after the **Attorney**'s **Retroactive Coverage Date**, and solely to the extent no other insurance or extension of insurance applies;

2.15.3 An **Attorney** who was, before the **Effective Date** of the **Policy**, a partner, stockholder or employee of the **Named Insured** or a **Predecessor Firm**, provided that information requested on the application concerning such persons has been provided to the **Company**, and solely for **Claim**s arising from such **Attorney**'s **Professional Services** performed on or after the **Attorney**'s **Retroactive Coverage Date**, and solely to the extent no other insurance or extension of insurance applies;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



**ALPS**
Property & Casualty Insurance Company

---

*LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY*

---

Named Insured: Fillmore Spencer LLC                  Policy No. <u>ALPS17910- 2</u>

Effective Date:5/24/2016

### FIRST DOLLAR DEFENSE ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

**4.     CONDITIONS**

4.1     DEDUCTIBLE

Section 4.1.1 is deleted in its entirety and replaced by the following:

4.1.1     For each **Claim** covered by this **Policy**, the **Named Insured** shall pay all **Damages** up to the **Deductible**.  Each **Insured** shall be jointly and severally liable for such **Damages** in the event the **Named Insured** fails to make any required payment.  The **Company** shall not have any obligation to pay **Damages** until after the **Deductible** is exhausted.  If the **Company** pays any amount within the amount of a **Deductible,** each **Insured** shall be jointly and severally liable to reimburse the **Company** for any and all such amounts and shall do so on demand.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



Property & Casualty Insurance Company

---

*LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY*

---

Named Insured: Fillmore Spencer LLC

Policy No. <u>ALPS17910- 2</u>

Effective Date: <u>5/24/2016</u>

## EXCLUDED ENTITY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

Section **3, Exclusions**, is amended by adding the following Exclusions thereof:

No coverage is afforded under this **Policy** and this **Policy** does not apply to any actual or potential **Claim** arising from or in connection with any act, error or omission in **Professional Services** rendered or that should have been rendered by the **Insured** in regard to the **Insured**'s relationship with or work performed for or on behalf of each EXCLUDED ENTITY identified below.

No coverage is afforded under this **Policy** and this **Policy** does not apply to any actual or alleged facts, events, circumstances, transactions or matters relating to the EXCLUDED ENTITY described below.

EXCLUDED ENTITY:

<u>SJB Ventures, LLC</u>

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

LPL-END-X-ENT (06-13)



Property & Casualty Insurance Company

---

*LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY*

---

Named Insured: Fillmore Spencer LLC

Policy No. ALPS17910- 2

Effective Date: 5/24/2016

## EXCLUDED MATTER ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

**3.     EXCLUSIONS**

Section **3, Exclusions**, is amended by adding the following Exclusions thereto:

> No coverage is afforded under this **Policy** and this **Policy** does not apply to any actual or potential **Claim** arising from or in connection with any act, error or omission in **Professional Services** rendered or that should have been rendered by the **Insured** in relation to the EXCLUDED MATTER described below.

> No coverage is afforded under this **Policy** and this **Policy** does not apply to any actual or alleged facts, events, circumstances, transactions or matters relating to the EXCLUDED MATTER described below, or derived from the same or substantially similar facts, events, circumstances, transactions or matters as alleged in or underlying the EXCLUDED MATTER described below.

> EXCLUDED MATTER:
> Kellie Nguyen
> Denali Industries

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**LPL-END-X-MATT (06-13)**

## UTAH AMENDATORY ENDORSEMENT

This Endorsement shall apply to and form a part of your **Policy** issued by ALPS Property & Casualty Insurance Company (the "**Company**"). The effective date of this endorsement is the **Effective Date** of your **Policy**.

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

**4.     CONDITIONS**

Section 4.13, CANCELLATION OR NON-RENEWAL, is deleted in its entirety and replaced with the following:

      4.13     CANCELLATION OR NON-RENEWAL

      4.13.1     The **Named Insured** may cancel the **Policy** by surrendering the **Policy** to the **Company** (or an authorized representative of the **Company**), or by written notice to the **Company** stating the date on which the **Named Insured** proposes that the cancellation will be effective.  In the event the **Named Insured** cancels the **Policy**, the **Company** shall be entitled to retain the customary "short rate" portion of the premium.

      4.13.2     If this **Policy** has been in effect for less than sixty (60) days, and is not a renewal of a **Policy** the **Company** has previously issued, the **Company** may cancel this **Policy** by mailing or delivering to the **Named Insured** at the mailing address shown in the **Policy** advance written notice of cancellation, stating the reason for cancellation, at least ten (10) days before the effective date of cancellation.

      4.13.3     If this **Policy** has been in effect for sixty (60) days or more, or is a renewal of a **Policy** the **Company** issued, the **Company** may cancel this **Policy** only upon the occurrence, after the effective date of the **Policy**, of one or more of the following:

          a.     nonpayment of premium;

          b.     material misrepresentation of fact which, if known to the **Company**, would have caused the **Company** not to issue the **Policy**;

          c.     substantial change in the risk assumed, except to the extent that the **Company** should reasonably have foreseen the change or contemplated the risk in issuing this **Policy**; or

          d.     substantial breaches of contractual duties or conditions.

      4.13.4     The **Company** shall mail by first class mail or deliver written notice of cancellation to the **Named Insured** at the principal address shown in the Declarations of this **Policy**. Notice of cancellation shall be provided at least thirty days before the cancellation date if the **Company** is canceling the **Policy** for any of the reasons listed in b. through d. in Section 4.13.3 above.  Notice of cancellation shall be provided at least ten (10) days before the cancellation date if cancellation is for nonpayment of premium.  The notice of cancellation shall state the precise reason or reasons for cancellation.  The effective date of cancellation shall become the end of the **Policy Period**.  Delivery of such notice shall be equivalent to mailing.

      4.13.5     In the event the **Company** cancels this **Policy** for any reason, it will compute earned premium on a *pro rata* basis.  The **Company** may make any resultant premium adjustments at the time cancellation is effective, or as soon thereafter as is practicable.  However, the payment or tender of unearned premium is not a condition of or a pre-requisite to cancellation of the **Policy**.

      4.13.6     Should the **Company** decide to nonrenew this **Policy**, then the **Company** shall mail by first class mail or deliver written notice of nonrenewal to the **Named Insured** at the principal address shown in the Declarations to this **Policy**, at least thirty (30) days before the end of the **Policy Period** or the anniversary date of the **Policy** if the **Policy Period** is greater than one year.  The notice shall state the precise reason or reasons for nonrenewal, and will advise the **Named Insured** of the **Named Insured's** right to make written inquiry regarding the reason for nonrenewal.  Delivery of such notice shall be equivalent to mailing.

If the **Company** decides to renew this **Policy** upon its expiration, the **Company** shall mail by first class mail or deliver written notice to the **Named Insured** at the principal address shown in the Declarations of this **Policy** not more than forty-five(45)  nor less than fourteen (14) days prior to the date the renewal premium is due.  The notice shall state the amount of the renewal premium, how it may be paid and that the **Named Insured**'s failure to pay the renewal premium by the due date terminates the **Named Insured**'s right to renew the **Policy**.

If the **Company** offers to renew this **Policy** on less favorable terms or at higher rates, the new terms or rates take effect on the **Policy** renewal date if the **Company** delivers or mail by first class to the **Named Insured** at the principal address shown in the Declarations of this **Policy** notice of the new terms or rates at least thirty days (30) prior to the expiration of the **Policy Period**.  If the notice is mailed less than thirty (30) days before the end of the **Policy Period** the new terms and rates do not take effect until thirty (30) days after the notice is delivered or sent by first class mail, and the **Named Insured** may elect to cancel the renewal **Policy** at any time during the thirty (30) day period.  Return premiums or additional premium charges shall be calculated on a pro rata basis.  However, this Section does not apply if the only change in terms is a rate increase which applies to the class of business to which this **Policy** belongs, a rate increase resulting from a classification change based on the altered nature or the extent of the risk insured against, or a change in the **Policy** made to make the **Policy** consistent with Utah law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



## *LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY*

### PLEASE READ THE ENTIRE POLICY CAREFULLY

CLAIMS MADE AND REPORTED POLICY

THIS IS A "CLAIMS MADE AND REPORTED" INSURANCE **POLICY**.  THEREFORE, AS A CONDITION PRECEDENT TO THE **COMPANY**'S OBLIGATION TO DEFEND OR INDEMNIFY THE **INSURED** UNDER THIS **POLICY**, THE **INSURED** MUST IMMEDIATELY REPORT ANY **CLAIM** TO ALPS DURING THE **POLICY PERIOD** OR DURING ANY APPLICABLE **EXTENDED REPORTING PERIOD**.  NO COVERAGE EXISTS UNDER THIS **POLICY** FOR A **CLAIM** WHICH IS FIRST MADE AGAINST THE **INSURED** OR FIRST REPORTED TO ALPS BEFORE OR AFTER THE **POLICY PERIOD** OR ANY APPLICABLE **EXTENDED REPORTING PERIOD**.  IF THE **INSURED** RECEIVES NOTICE OF A **CLAIM**, OR BECOMES AWARE OF AN ACT, ERROR OR OMISSION OR **PERSONAL INJURY** THAT COULD REASONABLY BE EXPECTED TO BE THE BASIS OF A **CLAIM**, THEN THE **INSURED** MUST, AS A CONDITION PRECEDENT TO THE **COMPANY**'S OBLIGATION TO DEFEND OR INDEMNIFY THE **INSURED**, IMMEDIATELY DELIVER A WRITTEN NOTICE OF THE **CLAIM** DIRECTLY TO THE **COMPANY** VIA EMAIL, FACSIMILE, OR MAIL AT ANY OF THE FOLLOWING:

| **NOTICE OF CLAIM** | |
| --- | --- |
| Email: | Claims@alpsnet.com |
| Facsimile: | 406-728-7416 |
| Mail Address: | ALPS |
| | 111 N. Higgins, Ste. 200 |
| | P.O. Box 9169 |
| | Missoula, MT  59807-9169 |

If you deliver notice of a **Claim** or circumstances which may give rise to a **Claim** to the **Company** via email at Claims@alpsnet.com you must then receive an email from the **Company** Account Center Portal acknowledging receipt of the notice before the notice is considered to have been received.  If you do not receive an acknowledging email from the **Company** by the end of the next business day after delivering a notice to the **Company** via email, then please contact the **Company** at 800-367-2577 for further assistance.

CLAIM EXPENSE ALLOWANCE

This **Policy** provides a **Claim Expense Allowance**.  The **Company**'s payment of any **Claim Expenses** will first be applied against and reduce the **Claim Expense Allowance**.  Any **Claim Expenses** paid by the **Company** will not be applied against or reduce the **Limit of Liability** until after the **Claim Expense Allowance** has been exhausted, at which time any additional **Claim Expenses** paid by the **Company** will be applied against and reduce the **Limit of Liability** available to pay **Damages**.

SEPARATE AND DISTINCT POLICY AND LIMIT OF LIABILITY

This **Policy** is a separate insuring agreement and distinct from any other insurance policy the **Company** may issue to you.  Each insurance policy the **Company** issues to you should be considered to be a separate and independent insuring agreement with its own separate terms, conditions and definitions.  No coverage is afforded under this **Policy** for any **Claim** that is otherwise covered under any other insurance policy the **Company** issues to you.  The limits of liability provided by each separate insurance policy the **Company** issues to you shall not be added together with the limits of liability of any other insurance policy the **Company** issues to you.



## STANDARD LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

ALPS Property & Casualty Insurance Company (herein called "the **Company**"), agrees with the **Named Insured**, in consideration of the payment of the premium, and in reliance upon all application documents submitted for this **Policy** and any prior policies, as follows:

## 1.    INSURING AGREEMENTS

### 1.1    COVERAGE

Subject to the **Limit of Liability**, exclusions, conditions and other terms of this **Policy**, the **Company** agrees to pay on behalf of the **Insured** all sums (in excess of the **Deductible** amount) that the **Insured** becomes legally obligated to pay as **Damages**, arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD**, provided that:

1.1.1    the **Claim** arises from an act, error, omission or **Personal Injury** that happened on or after the **Loss Inclusion Date** and the **Retroactive Coverage Date** set forth in Items 2 and 3 of the Declarations, and that the **Claim** arises from or is in connection with**:**

(a)    an act, error or omission in **Professional Services** that were or should have been rendered by the **Insured**, or

(b)    a **Personal Injury** arising out of the **Professional Services** of the **Insured**;

1.1.2    at the **Effective Date** of this **Policy**, no **Insured** knew or reasonably should have known or foreseen that the act, error, omission or **Personal Injury** might be the basis of a **Claim**; and

1.1.3    the **Claim** is not otherwise covered under any other insurance policy that the **Company** has issued to the **Named Insured**.

### 1.2    DEFENSE AND CLAIM EXPENSES

1.2.1    For any **Claim** covered under this **Policy**, the **Company** shall have the right and the duty to defend such **Claim** even if any or all of the allegations of the **Claim** are groundless, false or fraudulent.  The **Company** shall have the right to appoint counsel to provide the defense, after consultation with the **Insured**, when practicable (consultation with any one **Insured**, in the **Company**'s sole discretion, being sufficient), and shall pay **Claim Expenses** in accordance with the terms of this **Policy**.  The **Company** shall not have a duty to defend or to pay such expenses as to any **Claim** not covered under this **Policy**, and shall have the right to seek reimbursement from any **Insured**, who shall promptly provide such reimbursement, for any amount paid by the **Company** in defending any such non-covered **Claim**, including any amount paid in defending a non-covered **Claim** that is asserted together with one or more covered **Claim**s.

1.2.2    The **Company** may make such investigations as it deems appropriate.

1.2.3    Where an **Insured** has a right to arbitrate a **Claim**, or receives a demand for arbitration, the **Company** shall have sole discretion as to whether to seek, agree to or reject arbitration.

1.2.4    In the event a **Claim** covered under this **Policy** is made against an **Insured**, and in the same matter a **Claim** is also made against a non-attorney who referred to the **Insured** the matter from which the **Claim** arises, the **Company** shall provide the same defense to the referring party as to the **Insured**.  The **Company** shall have no other obligation to the referring party, including any obligation to pay any **Damages** or other **Claim Expenses** on the party's behalf.  Any **Claim Expenses** associated with the defense of the referring

party shall be subject to the **Deductible**, and shall be included within, and shall not increase, the **Claim Expense Allowance** and the **Limit of Liability**.

1.3    SETTLEMENT AND CONSENT TO SETTLE

1.3.1    The **Company** may undertake such settlement negotiations and make such settlements as it deems appropriate and expedient; provided, however, that in the event the **Company** has adequate time and it is practicable to do so, the **Company** shall consult with the **Insured** regarding the **Company**'s decision to settle a **Claim** (consultation with any one **Insured**, in the **Company**'s sole discretion, being sufficient).  If the **Insured** disagrees with the **Company**'s decision to settle a **Claim**, the **Insured** must immediately appeal to peer review, as described in Section 1.3.2 below.

1.3.2    Upon receipt of the **Insured**'s notice of such an appeal, the **Company** in its sole discretion shall determine if there is adequate time to conduct the peer review, taking into consideration court calendars, settlement demand deadlines, discovery deadlines and the like.  If the **Company** determines that peer review may go forward, the **Company** shall empanel a committee composed of not less than three attorneys.  The **Company** may, in its sole discretion, consult with the **Insured** regarding the composition of the panel.  The committee shall then review the **Company**'s decision to settle to determine whether it is reasonable under the circumstances.  Upon completion of its review, the committee shall promptly advise the **Company** and the **Insured** of its decision.  The committee's decision shall be final and binding on both the **Insured** and the **Company**.  However, nothing in this section shall in any way impair the right of the **Company** to make any settlement that it deems, in its sole discretion, to be required pursuant to any statutory or other legal requirement concerning fair settlement practices of insurers.

1.4    EXHAUSTION OF LIMIT OF LIABILITY; TENDER OF REMAINING LIMIT

1.4.1    The **Company**'s duty to defend shall be fully satisfied, and the **Company** shall not be obligated to continue to defend any **Claim** or pay any **Claim Expenses**, nor obligated to pay any **Damages**, or interest thereon, after:

   (a)    the applicable **Limit of Liability** has been exhausted by payments of **Damages** and/or **Claim Expenses**; or

   (b)    the **Company** has deposited an amount equal to the applicable **Limit of Liability**, minus any **Damages** paid on the **Claim** and any **Claim Expenses** paid on the **Claim** and chargeable against the **Limit of Liability**, with a court of competent jurisdiction, to be disbursed by the court's order.

In either such case, the **Company** shall have the right to withdraw from further defense of the **Claim** by tendering control of the defense to the **Insured**.  The **Insured** agrees, as a condition to the issuance of this **Policy**, to accept such tender.

1.5    POLICY TERRITORY

This **Policy** applies to any act, error or omission occurring anywhere in the world, provided that a **Claim** otherwise covered by this **Policy** is made within the United States of America, its territories or possessions, or Canada.

**2.    DEFINITIONS**

As used in this **Policy**:

2.1    **Attorney** means an individual attorney who is properly licensed to practice law or a professional business entity of which an individual attorney who is properly licensed to practice law is the sole owner and employee.

2.2    **Bodily Injury** means any injury to the body, any sickness or disease, or any death.  **Bodily Injury** also includes any mental, psychological, or emotional injury, anguish, tension, distress, pain, suffering, or shock, or death resulting therefrom, regardless of whether or not such condition results from any physical injury, sickness or disease, or from the death of any person.

2.3     **Claim** means a demand for money or services, including but not limited to the service of suit or institution of arbitration proceedings against the **Insured**; provided, however, that **Claim** does not mean nor include any such demand, service or proceeding arising from or in connection with:

2.3.1     alleged discrimination by an **Insured,** including, but not limited to, discrimination based on race, color, creed, age, sex, nationality, marital status or sexual orientation;

2.3.2     alleged sexual harassment or misconduct by an **Insured**;

2.3.3     any nuclear reaction, radiation or contamination, regardless of cause; or

2.3.4     any **Bodily Injury** of any person.

2.4     **Claim Expenses** means:

2.4.1     fees charged by any attorney(s) designated by the **Company** to defend a **Claim** or otherwise represent an **Insured**; and

2.4.2     all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **Claim** (including a suit or proceeding arising in connection therewith), if incurred by the **Company**, or by the **Insured** with prior written consent of the **Company**.

**Claim Expenses** does not mean nor include:

2.4.3     salaries of regular employees or officials of the **Company** or the **Named Insured**; or

2.4.4     payment or collateral for any attachment bond or appeal bond.

2.5     **Claim Expense Allowance** means an amount equal to one half of the "Each **Claim**" **Limit of Liability** listed in Item 4 of the Declarations, or $500,000, whichever is less.  As described further in Section 4.2 of this **Policy** and subject to Section 4.2.2 of this **Policy**, the **Claim Expense Allowance** shall be the maximum aggregate amount the **Company** shall be obligated to pay for **Claim Expenses** during the **Policy Period**, without regard to the number of **Claim**s or claimants, or the number of **Insured**s, and includes the amount of any applicable **Deductible**.

2.6     **Damages** means any monetary award by way of judgment or final arbitration, or any settlement; provided, however, that **Damages** does not mean nor include:

2.6.1     punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

2.6.2     awards deemed uninsurable by law;

2.6.3     injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4     restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an **Insured**, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an **Insured**; or

2.6.5     any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

2.7     **Deductible** means the **Deductible** amount for "Each **Claim**" stated in Item 5 of the Declarations. The **Deductible** is described further in Sections 4.1 and 4.2 of this **Policy**.

2.8     **Effective Date** means 12:01 a.m., at the address stated in Item 1 of the Declarations, on the **Effective Date** listed in Item 3 of the Declarations.  The **Effective Date** of this **Policy** shall also be the **Effective Date** of any **Extended Reporting Period Endorsement** issued pursuant to Section 4.4 hereof.

2.9     **Exempt Organization** means an **Organization** exempt from taxation within the meaning of the following enumerated sections of 501(c) of the United States Internal Revenue Code:  501(c)(3), 501(c)(4), 501(c)(6), 501(c)(7), 501(c)(8) and 501(c)(10).

2.10     **Expiration Date** means 12:01 a.m., at the address stated in Item 1 of the Declarations, on the **Expiration Date** listed in Item 3 of the Declarations.

2.11     **Extended Reporting Period Endorsement** means an endorsement issued by the **Company** providing for an **Extended Reporting Period** as described in Section 4.4 of this **Policy**.

2.12     **Extended Reporting Period** means the period of time set forth in an **Extended Reporting Period Endorsement** that may be provided after the end of the **Policy Period**, as described in Section 4.4 of this **Policy**, for reporting of a **Claim** that:  (a) would otherwise be covered by this **Policy**; (b) arises from an act, error or omission or **Personal Injury** that occurred after the **Loss Inclusion Date** and the **Retroactive Coverage Date** and before the end of the **Policy Period**; and (c) is first made, and first reported to the **Company**, after the end of the **Policy Period** and during the **Extended Reporting Period**.

2.13     **Formal Mediation** means a voluntary process by which a qualified professional mediator is chosen by the parties to the **Claim**, with agreement by the **Company**, and the mediator meets with and intercedes between the parties in an attempt to resolve the **Claim**.

2.14     **Independent Contractor** means a non-employee **Attorney** who is or was rendering services to the **Named Insured** as an independent contractor of the **Named Insured**, but solely for a claim arising from the provision of **Professional Services** by the **Named Insured** or predecessor firm, solely to the extent no other insurance or extension of insurance applies, and solely to the extent said **Independent Contractor**'s services satisfy the following conditions:

2.14.1     The services must be rendered to the **Named Insured** in conjunction with the **Named Insured**'s rendering of **Professional Services**; and

2.14.2     If and to the extent any fee is charged and collected for the **Independent Contractor**'s services, only the **Named Insured** has charged and collected a fee for said services.

2.15     **Insured** means:

2.15.1     The **Named Insured** listed in Item 1 of the Declarations;

2.15.2     An **Attorney** who is, at the time a **Claim** is first made, or who was, at the **Effective Date** of the **Policy**, a partner, stockholder or employee of the **Named Insured**, and who is or was identified in Item 2 of the Declarations, provided that the requirements of this **Policy** concerning amendment of Item 2 have been complied with, and solely for **Claim**s arising from such **Attorney**'s **Professional Services** on behalf of the **Named Insured** or a **Predecessor Firm**, performed on or after the **Attorney**'s **Retroactive Coverage Date**, and solely to the extent no other insurance or extension of insurance applies;

2.15.3     An **Attorney** who was, before the **Effective Date** of the **Policy**, a partner, stockholder or employee of the **Named Insured** or a **Predecessor Firm**, provided that information requested on the application concerning such persons has been provided to the **Company**, and solely for **Claim**s arising from such **Attorney**'s **Professional Services** on behalf of the **Named Insured** or a **Predecessor Firm**, performed on or after the **Attorney**'s **Retroactive Coverage Date**, and solely to the extent no other insurance or extension of insurance applies;

2.15.4     An **Attorney** acting as "of counsel" under formal contract with the **Named Insured** or a **Predecessor Firm**, and who is identified in Item 2 of the Declarations, provided that information requested on the application concerning such person has been provided and that the requirements of this **Policy** concerning amendment of Item 2 have been complied with, and solely for **Claim**s arising from such **Attorney**'s **Professional Services** on behalf of the **Named Insured** or **Predecessor Firm**, performed on or after the **Attorney**'s **Retroactive Coverage Date**, and solely to the extent no other insurance or extension of insurance applies;

2.15.5    A non-**Attorney** who is or was an employee of the **Named Insured** or a **Predecessor Firm**, solely for **Claim**s arising from actions within the scope of such person's duties as an employee of the **Named Insured** or a **Predecessor Firm**, and arising from the provision of **Professional Services** by the **Named Insured** or **Predecessor Firm**, and solely to the extent no other insurance or extension of insurance applies;

2.15.6    The heirs, executors, administrators, assigns and legal representatives of an **Insured**, in the event of the **Insured**'s death, incapacity or bankruptcy; and

2.15.7    An **Independent Contractor** who is, at the time a **Claim** is first made, or who was, at the **Effective Date** of this **Policy**, an **Independent Contractor** of the **Named Insured**, and who is or was identified in Item 2 of the Declarations.

2.16      **Limit of Liability** means, as applicable, the "Each **Claim**" **Limit of Liability** and the "Aggregate" **Limit of Liability** as listed in Item 4 of the Declarations.  The **Limit of Liability** includes the amount of any applicable **Deductible** and is described further in Section 4.2 of this **Policy**.

2.17      **Loss Inclusion Date** means the **Loss Inclusion Date** of this **Policy** as listed in Item 3 of the Declarations, the effect of which is described in Sections 1.1 and 4.4 of this **Policy**.

2.18      **Named Insured** means the firm or individual listed as the **Named Insured** in Item 1 of the Declarations.

2.19      **Organization** means any corporation, partnership, limited partnership, limited liability partnership or limited liability company; association; charitable **Organization**; health or welfare benefit plan, program, fund or trust;  pension, profit-sharing, 401(k) or other retirement benefit plan, program, fund or trust; mutual fund or investment trust; or any other business entity, enterprise or **Organization** of any kind or nature whatsoever.  **Organization** does not include a decedent's estate or a trust (other than an investment trust).

2.20      **Personal Injury** means an injury other than a **Bodily Injury** that arises from:

2.20.1    false arrest, detention or imprisonment;

2.20.2    wrongful entry or eviction or other invasion of private occupancy;

2.20.3    malicious prosecution;

2.20.4    publication or utterance of libel, slander or other defamatory or disparaging material; or

2.20.5    invasion of privacy, or publication or utterance in violation of an individual's right of privacy.

2.21      **Policy** means this Lawyers Professional Liability Insurance Policy that the **Company** has issued to the **Named Insured**, including all endorsements attaching hereto, and including all current and previous application forms any **Insured** has delivered to the **Company**.

2.22      **Policy Period** means the period of time between the **Effective Date** listed in Item 3 of the Declarations and the earlier to occur of (a) the **Expiration Date** listed in Item 3 of the Declarations, or (b) the date this **Policy** is otherwise terminated or cancelled prior to the **Expiration Date**.  **Policy Period** does not mean nor include any **Extended Reporting Period** provided pursuant to Section 4.4 of this **Policy**.

2.23      **Predecessor Firm** means any sole proprietorship, partnership, limited liability partnership, limited liability corporation, or professional corporation that was engaged in the private practice of law, the financial assets and liabilities of which the **Named Insured** acquired more than fifty percent, provided that such firm has been disclosed to the **Company** in the application.

2.24    **Professional Services** means:

2.24.1    services or activities performed solely for others as an **Attorney** in an attorney-client relationship on behalf of one or more clients applying the **Attorney**'s specialized education, knowledge, skill, labor, experience and/or training;

2.24.2    services as mediator, arbitrator, or other facilitator in a dispute resolution process;

2.24.3    services as administrator, conservator, guardian, executor, personal representative or trustee, so long as the **Insured** (a) is not a beneficiary of such estate or trust, and (b) is not receiving compensation other than fees for such services paid directly from such estate or trust; or

2.24.4    services as an **Attorney** in researching or certifying title to real estate, but excluding services as a title insurance agent acting on behalf of a title insurance company, unless such services are specifically included under this **Policy** by a separate endorsement identified in Item 7 of the Declarations.

          **Professional Services** does not mean nor include:

2.24.5    any obligations assumed by or performed under any contract other than one to provide **Professional Services**;

2.24.6    the rendering of investment advice in any context to any person including, but not limited to, advice concerning securities, real property, commodities, futures contracts or franchises; or

2.24.7    services as a broker, dealer, business manager, accountant, or real estate broker or agent.

2.25    **Related Professional Services** means **Professional Services** that are connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision, including but not limited to work that is part of the same or continuing **Professional Services**.

2.26    **Retroactive Coverage Date** or **Retroactive Date** means the date for each **Insured Attorney** set forth in Item 2 of the Declarations, the effect of which is described in Sections 1.1, 2.15, and 4.4 of this **Policy**.

2.27    **Sole Practitioner** means:

2.27.1    the individual **Insured Attorney** identified in Item 2 of the Declaration who is also the **Named Insured**; or

2.27.2    the individual **Insured Attorney** identified in Item 2 of the Declarations who is the sole shareholder, member or other owner of the **Named Insured**.

## 3.    EXCLUSIONS

3.1    **THIS POLICY DOES NOT APPLY TO ANY CLAIM ARISING FROM OR IN CONNECTION WITH:**

3.1.1    Any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an **Insured**, or any **Personal Injury** arising from such conduct, subject to Section 4.3 of this **Policy** ("innocent insured coverage");

3.1.2    Any trust or estate of which an **Insured** is an heir, devisee, beneficiary or distributee of such trust or estate;

3.1.3    Any **Professional Services** that were or should have been rendered to any **Organization** (including the ownership, maintenance or care of any property in connection with any such **Organization**) of which, at the time such **Professional Services** were or should have been rendered:

          (a)    An **Insured** was an owner, officer, director, employee or other fiduciary;

(b)     An **Insured** was a partner, shareholder, member or other owner; provided, however, that this provision does not apply if, at the time such **Professional Services** were or should have been rendered, no **Insured** (or group of **Insureds** collectively) owned, possessed or controlled a total voting interest or beneficial interest of more than five percent (5%) of such **Organization**; or

(c)     An **Insured** served in any capacity to directly or indirectly control, operate or manage such **Organization**.

This exclusion shall not apply to any **Claim** arising from or in connection with (i) an **Insured**'s position as an officer or director of an **Exempt Organization**, but only to the extent the **Insured** is not indemnified by the **Exempt Organization**, and only to the extent no other insurance applies, or (ii) any **Professional Services** that were or should have been rendered to an **Organization** listed on an endorsement identified in Item 7 of the Declarations;

3.1.4     Notary certification without the physical appearance of the person who is or who claims to be the person signing said instrument;

3.1.5     Any act, error, omission or **Personal Injury** that occurred prior to the **Effective Date** of this **Policy**, if:

(a)     The act, error, omission or **Personal Injury** was in the course of **Professional Services** performed for a firm other than the **Named Insured**, and there is another policy of professional liability insurance that provides coverage for the **Claim**, regardless of the amount, if any, of the available limits of liability of the other policy, and regardless of whether or not the deductible provisions or limits of liability of the other policy are different from those of this **Policy**; or

(b)     There is an earlier-incepting policy of professional liability insurance that provides coverage for the **Claim**, or would have provided coverage if the **Insured**'s obligations under that policy had been complied with, regardless of the amount, if any, of the available limits of liability of the prior policy, and regardless of whether or not the deductible provisions or limits of liability of the prior policy are different from those of this **Policy**; or

(c)     Prior to the **Effective Date** of this **Policy**, any **Insured** gave or should have given, to any insurer, notice of a **Claim** or potential **Claim** arising from the act, error, omission, or **Personal Injury**, or from any act, error, omission, or **Personal Injury** in **Related Professional Services**;

3.1.6     An **Insured**'s activities as an elected public official or as an employee of a governmental body, subdivision, or agency thereof; provided, however, that this exclusion shall not apply to any **Claim** arising from an **Insured**'s having provided **Professional Services** to any such body, subdivision or agency in the ordinary course of the **Insured**'s practice, for which a fee for **Professional Services** was charged and collected, including any such **Claim** to the extent the **Insured** is deemed a public employee solely by virtue of rendering **Professional Services** to such governmental body, subdivision or agency;

3.1.7     An **Insured**'s activities or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974, as amended, or any regulation or order issued pursuant thereto; provided, however, that this exclusion shall not apply to a **Claim** arising from an **Insured**'s having provided **Professional Services** in the ordinary course of the **Insured**'s practice, for which a fee for **Professional Services** was charged and collected, including any **Claim** seeking to hold the **Insured** responsible as a fiduciary solely by reason of **Professional Services** rendered with respect to any employee benefit plan;

3.1.8     Any conversion, misappropriation, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person held or controlled by an **Insured** in any capacity or under any authority, including any loss or reduction in value of such funds or property;

3.1.9     Any dispute over fees or costs, or any **Claim** that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an **Insured**;

3.1.10   Any defect in title to real estate that was not disclosed in public records and that any **Insured** knew about when a title policy was issued;

3.1.11   Any liability agreed to or assumed by an **Insured** under an agreement where the **Insured** has agreed to share in any loss payments or expenses due under a title insurance policy; or

3.1.12   Any **Claim** that is otherwise covered under any other insurance policy that the **Company** has issued to the **Named Insured**.

3.2   **THIS POLICY DOES NOT APPLY TO ANY CLAIM:**

3.2.1   Made by an employer against an **Insured** who is or was an employee of the employer;

3.2.2   Made by an **Insured**;

3.2.3   Made by a family member or other relative of an **Insured**; or

3.2.4   Made by anyone who is or was a partner, officer, director, owner, stockholder or employee of any **Insured**.

4.   **CONDITIONS**

4.1   DEDUCTIBLE

4.1.1   For each and every **Claim** covered by this **Policy**, the **Named Insured** shall pay all **Claim Expenses** and **Damages** up to the **Deductible** for each and every **Claim**.  Each **Insured** shall be jointly and severally liable for such **Claim Expenses** and **Damages** in the event the **Named Insured** fails to make any required payment.  The **Company** shall not have any obligation to pay **Claim Expenses** or **Damages** until after the deductible is exhausted.  If the **Company** pays any amount within the amount of a **Deductible,** each **Insured** shall be jointly and severally liable to reimburse the **Company** for any and all such amounts and shall do so on demand.

4.1.2   The maximum aggregate **Deductible** amount payable by the **Named Insured** for all **Claims** first made and reported during a **Policy Period**, without regard to the number of **Claim**s or claimants, or the number of **Insured**s, shall be twice the "Each **Claim**" **Deductible** amount listed in Item 5 of the Declarations.

4.1.3   If a **Claim** is resolved through the use of **Formal Mediation** or arbitration, the **Deductible** payable by the **Named Insured** for that **Claim** will be reduced by fifty percent, up to a maximum reduction of $12,500.

4.2   LIMIT OF LIABILITY

4.2.1   Subject to Section 4.2.2 below, the **Claim Expense Allowance** shall be the maximum aggregate amount the **Company** shall be obligated to pay for **Claim Expenses** for all **Claims** first made and reported during a **Policy Period**, without regard to the number of **Claim**s or claimants, or the number of **Insured**s. The **Claim Expense Allowance** includes the **Deductible**, and to the extent any **Insured** is required during the **Policy Period** to pay **Claim Expenses** as part of a **Deductible** (see Section 4.1.1 above), the remaining available **Claim Expense Allowance** for the **Policy Period** (and for any related **Claim** described in Section 4.2.5 below) shall be reduced by the amount of such payments by the **Insured**.

4.2.2   In the event payment by the **Named Insured** or the **Company** (or both) of **Claim Expenses** exhausts the remaining available **Claim Expense Allowance** under this **Policy**, any further payment of **Claim Expenses** shall reduce the remaining available **Limit of Liability**, described further below.  The **Company** shall have no further obligation to pay **Claim Expenses** once any **Limit of Liability** is reached.

4.2.3   Subject always to the remaining available "Aggregate" **Limit of Liability** in the event more than one **Claim** is first made and first reported during the **Policy Period,** the "Each **Claim**" **Limit of Liability** listed in Item 4 of the Declarations shall be the maximum amount the **Company** shall pay for each **Claim**

first made and first reported during a **Policy Period**, without regard to the number of claimants or the number of **Insured**s.  The **Limit of Liability** includes the **Deductible**, and to the extent any **Insured** is required during the **Policy Period** to pay **Damages** as part of a **Deductible** (see Section 4.1.1 above), the remaining available **Limit of Liability** for the **Claim** (and for any related **Claim** described in Section 4.2.5 below) shall be reduced by the amount of such payments by the **Insured**.

4.2.4    The "Aggregate" **Limit of Liability** listed in Item 4 of the Declarations shall be the maximum amount the **Company** shall pay for all **Claims** first made and first reported during a **Policy Period** (and all **Claims** that arise out of or in connection with the same or **Related Professional Services**, whenever made, see Section 4.2.5 below), without regard to the number of **Claim**s or claimants, or the number of **Insured**s.

4.2.5    Neither the making of one or more **Claims** against more than one **Insured**, nor the making of one or more **Claims** by more than one claimant, shall operate to increase the **Limit of Liability**. All **Claims** that arise out of or in connection with the same or **Related Professional Services**, whenever made, and without regard to the number of **Claim**s or claimants, or the number of **Insured**s, shall be considered together as a single **Claim** for purposes of this section, and shall be subject to the same single "Each **Claim**" **Limit of Liability**, "Aggregate" **Limit of Liability**, and **Claim Expense Allowance**.

4.2.6    The **Limit of Liability** in the event of an **Extended Reporting Period Endorsement** is described in Section 4.4 below.

4.2.7    If the **Company** pays any amount in excess of the applicable **Limit of Liability**, or any other amount for which the **Company** has no obligation under this **Policy**, the **Insureds** shall be jointly and severally liable to the **Company** for any and all such amounts and, on demand, shall promptly reimburse such amounts to the **Company**.

4.3      INNOCENT-INSURED COVERAGE

4.3.1    Whenever a **Claim** otherwise covered by this **Policy** would be excluded based on Section 3.1.1, coverage will be afforded to any individual **Insured** who did not personally commit, or personally participate in committing, any such act, error or omission, or in causing such **Personal Injury**, and who did not remain passive after learning of the act, error, omission, or **Personal Injury**, provided that each such individual **Insured** shall have immediately notified the **Company** and complied with all obligations under this **Policy** once said **Insured** obtained knowledge of the act, error, omission or **Personal Injury**.  Nothing in this section shall be interpreted to afford any coverage to a **Named Insured** that is an entity rather than an individual.

4.3.2    The **Company**'s obligation to make any payment under this Section 4.3 shall be in the excess of any and all assets of any **Insured** who is not afforded coverage under this Section 4.3.

4.4      EXTENDED REPORTING PERIOD ENDORSEMENT

4.4.1    In the event of the expiration of this **Policy**, or cancellation of this **Policy** by the **Named Insured** or the **Company**, and except as otherwise provided herein, the **Named Insured** shall have the right, upon written request to the **Company** and upon payment of the additional premium specified herein not more than thirty days after termination of this **Policy**, to have the **Company** issue an **Extended Reporting Period Endorsement**.

4.4.2    The **Extended Reporting Period Endorsement** shall provide coverage for **Claims** that:  (a) would otherwise be covered by this **Policy**; (b) arise from an act, error or omission or **Personal Injury** that occurred after the **Loss Inclusion Date** and the **Retroactive Coverage Date** and before the end of the **Policy Period**; and (c) are first made against the **Insured**, and first reported to the **Company**, after the end of the **Policy Period** and during the **Extended Reporting Period**.

4.4.3    If a **Sole Practitioner** has been the only **Insured Attorney** on policies issued by the **Company** to the **Named Insured** for five or more consecutive **Policy Periods**, then in the event of retirement, death, or total permanent disability of the **Sole Practitioner** during the **Policy Period**, the **Sole Practitioner** shall, upon written request to the **Company**, be entitled to receive an **Extended Reporting Period Endorsement** of unlimited duration at no additional premium, but otherwise subject to all the terms and conditions hereof.

4.4.4    If an **Insured Attorney** retires from or otherwise permanently and completely ceases the practice of law and the rendering of **Professional Services** during the **Policy Period**, then the **Insured Attorney** shall have the right, upon written request to the **Company** and upon payment of the additional premium specified herein, to have the **Company** issue an **Extended Reporting Period Endorsement** of unlimited duration to the **Insured Attorney**, subject to the following terms and conditions:

(a)    The **Extended Reporting Period Endorsement** issued to the **Insured Attorney** shall commence upon the latest to occur of the following:  (i) expiration of the **Policy Period**; (ii) expiration of any renewal or successive renewal of this **Policy**; or (iii) expiration of any **Extended Reporting Period Endorsement** issued to the **Named Insured**;

(b)    If the **Named Insured** maintains any other insurance that otherwise provides coverage to the **Insured Attorney**, the coverage provided under the **Extended Reporting Period Endorsement** issued to the **Insured Attorney** shall be in excess of the available limits of liability under such other insurance maintained by the **Named Insured**;

(c)    The **Extended Reporting Period Endorsement** issued to the **Insured Attorney** shall immediately terminate in the event the **Insured Attorney** commences the practice of law and begins rendering any **Professional Services** at any time after the **Company** issues the **Extended Reporting Period Endorsement**; and

(d)    The premium for the unlimited **Extended Reporting Period Endorsement** issued to the **Insured Attorney** shall be calculated based upon the **Insured Attorney**'s portion of the expiring premium of this **Policy** multiplied by the percentage applicable to an unlimited **Extended Reporting Period Endorsement** as set forth in Section 4.4.7 below.

4.4.5    Immediately upon issuance of an **Extended Reporting Period Endorsement**, the premium paid for the **Extended Reporting Period Endorsement** shall be non-refundable and the **Extended Reporting Period Endorsement** shall not be cancelable, except as provided in Section 4.4.6.

4.4.6    No **Extended Reporting Period Endorsement** under this section, nor any continuation thereof, shall be available to the **Named Insured**, and if issued shall be deemed automatically canceled, where:

(a)    The **Company** cancels this **Policy** or any other policy for failure to pay the premiums when due or for failure to pay any other amount due to the **Company**;

(b)    The **Company** cancels or rescinds this **Policy** or any other policy for misrepresentation in any application or other submission to the **Company**;

(c)    Any **Insured** fails to comply with the terms and conditions of this **Policy** or any other policy, including any **Extended Reporting Period Endorsement** or any other endorsements; or

(d)    Any **Insured**'s license or right to practice law has been revoked, suspended by or surrendered at the request of any regulatory authority.

4.4.7    The premiums for an **Extended Reporting Period Endorsement** (except as provided in Section 4.4.3) shall be calculated based upon a percentage of the expiring premium of this **Policy** as applied to the duration of the **Extended Reporting Period** as follows:

| Duration of **Extended Reporting Period** | Percentage of Expiring Premium |
|---|---|
| 1 Year | 125% |
| 2 Years | 175% |
| 3 Years | 200% |
| 5 Years | 265% |
| Unlimited | 300% |

4.4.8    The **Extended Reporting Period Endorsement** simply extends the reporting period during which a **Claim** may be first reported to the **Company** under this **Policy**.  Any **Claim** reported to the **Company** during the **Extended Reporting Period** shall be treated as if reported during the **Policy Period**.  The **Extended**

**Reporting Period Endorsement** does not create or establish a new or separate **Limit of Liability**. Instead, the **Company**'s **Limit of Liability** under an **Extended Reporting Period Endorsement** is part of, and not in addition to, the **Company**'s **Limit of Liability** during the **Policy Period**.

4.4.9   All other terms and conditions of this **Policy** shall apply to any **Extended Reporting Period Endorsement**.

4.5   OTHER INSURANCE

Except where coverage under this **Policy** is excluded under Section 3.1.5(a) or 3.1.5(b), the insurance provided under this **Policy** shall be excess over any other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is specifically written only as excess insurance over this **Policy**.

4.6   INSURED'S OBLIGATIONS UPON NOTICE OF CLAIM OR POTENTIAL CLAIM

4.6.1   When an **Insured** becomes aware of an act, error or omission or **Personal Injury** that could reasonably be expected to be the basis of a **Claim**, but no **Claim** arising therefrom has yet been made, then as a condition precedent to the **Company**'s obligation to defend or indemnify the **Insured** under this **Policy**, the **Insured** shall immediately give written notice to the **Company**.  Such notice shall include the fullest information obtainable concerning the potential **Claim**.  The **Insured** must deliver written notice to the **Company** in accordance with the CLAIMS MADE AND REPORTED POLICY paragraph set forth on page 1 of this **Policy**.

4.6.2   If, during the **Policy Period** or any **Extended Reporting Period**, the **Company** is given written notice of a potential **Claim** pursuant to Section 4.6.1, and a **Claim** arising from the same act, error or omission or **Personal Injury** is subsequently made against an **Insured** no later than six years after the end of the **Insured**'s last **Policy Period** or any applicable **Extended Reporting Period**, then any such **Claim** shall be deemed to have been first reported during the **Policy Period** or **Extended Reporting Period** in which the potential **Claim** was reported.

4.6.3   When a **Claim** is made against an **Insured,** the **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process received by him or his representative.  The **Company** shall have no obligation hereunder with respect to a **Claim** unless and until so notified.

4.6.4   In the event an **Insured** fails to give written notice to the **Company** of a **Claim**, prior to the end of the **Policy Period** in which the **Claim** is made, or in the event an **Insured** fails to give written notice to the **Company** of a potential **Claim**, as described in Section 4.6.1, prior to the end of the **Policy Period** in which the **Insured** first becomes aware of the act, error, omission, or **Personal Injury**, then no coverage for any such **Claim** shall be afforded to the **Insured** under any future policy issued by the **Company**.

4.7   ASSISTANCE AND COOPERATION OF THE INSURED

4.7.1   Each **Insured** shall cooperate with the **Company** in its investigation of any **Claim**, including, without limitation, by promptly complying with all requests for statements, reports, documents or other information, and by providing copies of all pertinent files upon request.

4.7.2   Each **Insured** shall cooperate and assist, as requested, in the defense of any **Claim**, in making any settlements, and in enforcing any right of contribution or indemnity against any person.  If requested by the **Company**, such assistance may include, without limitation, attendance at hearings and trials and assistance in securing and giving evidence and in obtaining the attendance of witnesses.  Neither the **Insured** nor the **Insured**'s legal representative shall impede the **Company**'s investigation or defense of any **Claim**.

4.7.3   Each **Insured** shall notify the **Company** of any demand to arbitrate a **Claim** against an **Insured**, and any right to demand arbitration of a **Claim**, and in the event the **Company** elects to proceed with arbitration, shall cooperate in any such proceeding.

4.7.4   No **Insured** shall, without the **Company**'s prior written consent, engage in or offer to engage in any of the following with respect to any **Claim** or potential **Claim**:  (a) make any payments; (b) admit any

liability; (c) stipulate to the entry of a judgment against the **Insured**; (d) settle any **Claim**; (e) assume any obligation; (f) negotiate any tolling agreement; or (g) incur any expense. If an **Insured** engages in or offers to engage in any of the foregoing, the **Insured** shall do so at the **Insured**'s own liability and expense.

### 4.8   ACTION AGAINST COMPANY

No action shall lie against the **Company** unless and until the **Insured** has fully complied with all terms and conditions of this **Policy**, and unless and until the amount of the **Insured**'s obligation to pay has been finally determined either by judgment against the **Insured** or by written agreement of the **Insured,** the claimant and the **Company**.  No person or **Organization** shall have the right under this **Policy** to join the **Company** as a party to any **Claim** against an **Insured**.

### 4.9   SUBROGATION

4.9.1     In the event of any payment under this **Policy**, the **Company** shall be subrogated to all the **Insured**'s rights of recovery against any person or organization.  The **Insured** shall execute and deliver such instruments and papers as may be required by the **Company**, and shall do whatever else is necessary, to secure such rights.  The **Insured** shall at no time do anything to prejudice such rights.

4.9.2     The **Company** shall not exercise any subrogation rights against another **Insured,** except with respect to any **Claim** arising from, involving, or in connection with any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission of, or **Personal Injury** caused by, such **Insured**.

4.9.3     Any amounts recovered through subrogation shall be apportioned as follows: First, to the repayment of expenses incurred in enforcing subrogation; Second, to repayment of any loss and expense payments by the **Insured** in excess of any **Deductible**; Third, to any loss and expense payments by an excess carrier on behalf of the **Insured**; Fourth, to any loss and expense payments by any primary carrier, including the **Company**, on behalf of the **Insured**; and Last, to repayment of the **Insured**'s **Deductible**.

### 4.10   CHANGES IN POLICY TERMS

Except where otherwise provided herein, no part of this **Policy** may be waived or changed, except by written endorsement issued to form a part of this **Policy**, and signed by an authorized representative of the **Company**. Neither notice to an agent nor knowledge possessed by an agent or by any other person shall effect any waiver or change in any part of this **Policy** or estop the **Company** from asserting any right under this **Policy**.

### 4.11   FIRM CHANGES

4.11.1     The **Named Insured** shall immediately notify the **Company** if, during the **Policy Period**, the **Named Insured** has: (a) any increase or decrease by more than 25 **Attorneys** or by more than 50% in the total number of **Attorneys** listed in Item 2 of the Declarations; or (b) any acquisition, dissolution or merger by or of the **Named Insured**.  Upon receipt of such notice, the **Company** reserves the right, in its sole discretion, to re-evaluate the risk insured under this **Policy** and to take appropriate underwriting action.

4.11.2     In all instances other than those described in the immediately preceding section, the **Named Insured** shall notify the **Company** within a commercially reasonable period of time if, during the **Policy Period**, the **Named Insured** seeks to add or delete an **Attorney** to or from the list of insured **Attorneys** in Item 2 of the Declarations.  Upon receipt of such notice, the **Company** reserves the right, in its sole discretion, to re-evaluate the risk insured under this **Policy** and to take appropriate underwriting action.

### 4.12   ASSIGNMENT

No rights or interests hereunder of any **Insured** may be assigned.

### 4.13   CANCELLATION OR NON-RENEWAL

4.13.1     The **Named Insured** may cancel this **Policy** at any time by surrendering this **Policy** to the **Company** (or an authorized representative of the **Company**), or by written notice to the **Company** stating

the date on which the **Named Insured** proposes that the cancellation will be effective.  In the event the **Named Insured** cancels this **Policy**, the **Company** shall be entitled to retain the customary "short rate" portion of the premium.

4.13.2    In the event the **Named Insured** has failed to pay when due a premium or **Deductible** under this **Policy**, or any other money owed to the **Company**, the **Company** may cancel this or any other policy by written notice of cancellation to the **Named Insured**.  The notice shall state the date on which the cancellation will be effective, which shall be no fewer than ten days following the date of the notice.  Such notice shall be effective and conclusive as to all **Insured**s hereunder.  Proof of mailing shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end date of the **Policy Period**.

4.13.3    For any reason other than nonpayment of premium or **Deductible** as set forth in Section 4.13.2, including but not limited to: (a) material misrepresentation; (b) substantial change in the risk assumed; or (c) substantial breach of contractual duties, conditions, statements or assurances, the **Company** may cancel this **Policy** by written notice of cancellation to the **Named Insured**.  The notice shall state the date on which the cancellation will be effective, which shall be no fewer than forty-five days after the date of the notice.  Such notice shall be effective and conclusive as to all **Insureds** hereunder.  Proof of mailing is sufficient proof of notice and the effective cancellation date stated in the notice will become the end date of the **Policy Period**.

4.13.4    In the event the **Company** cancels this **Policy** for any reason, it will compute earned premium on a *pro rata* basis.  The **Company** may make any resultant premium adjustments at the time cancellation is effective, or as soon thereafter as is practicable.  However, the payment or tender of unearned premium is not a condition of or a pre-requisite to cancellation of this **Policy**.

4.13.5    The **Company** may decline to renew this **Policy** for any reason.  In the event the **Company** declines to renew this **Policy**, the **Company** shall provide the **Named Insured** with no less than sixty (60) days advance notice thereof.

## 4.14    STATEMENTS IN DECLARATIONS AND APPLICATION

4.14.1    By acceptance of this **Policy**, each **Insured** agrees with, represents to and assures the **Company** that the statements, information and representations in the Declarations, in the application for this **Policy**, and in the applications for each prior policy issued by the **Company** to the **Insured**, are true and correct, that the Declarations and the application form a part of this **Policy**, and that this **Policy** is issued in reliance upon the truth of such statements, information and representations.

## 4.15    ENTIRE CONTRACT

This **Policy**, including any signed endorsements attaching hereto, and including any current or previously submitted application documents, are incorporated herein by reference, and embodies all agreements existing between the **Insured** and the **Company** relating to this insurance.

## 4.16    NONASSESSABLE POLICY

This **Policy** is not assessable.

## 4.17    SPECIAL LAWS

Any and all provisions of this **Policy** that are in conflict with applicable laws of the jurisdiction wherein this **Policy** is issued are hereby amended to conform to such laws.

## 4.18    LIBERALIZATION

If the **Company** makes revisions to this **Policy** form which take effect during the **Policy Period**, and such revisions would provide broader coverage than the prior form without an additional premium charge, then this **Policy** shall be deemed to have incorporated those revisions as of their effective date.

4.19    NOTICES

All notices to be delivered to the **Named Insured** under this **Policy** shall be mailed first class postage to the **Named Insured** at the address shown in Item 1 of the Declarations, unless **Company** is notified in writing of a change in the mailing address of the **Named Insured**.  Except for notice of a claim/potential claim, which shall be delivered to the **Company** in accordance with the NOTICE OF CLAIM paragraph set forth on page 1 of this **Policy**, all other notices to be delivered to the **Company** shall be mailed first class postage to the **Company** at the following address:

ALPS
111 North Higgins, Ste. 200
P.O. Box 9169
Missoula, MT 59807-9169

4.20    NAMED INSURED REPRESENTS ALL INSUREDS

By acceptance of this **Policy**, the **Named Insured** shall be designated to act on behalf of all **Insured**s for all purposes including, but not limited to, the giving and receiving of all notices, consents, communications and correspondence, the cancellation or non-renewal of this **Policy**, the payment of any premiums and **Deductible** due hereunder and the receipt of any return premiums that may be due under this **Policy**.