IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **ALPS PROPERTY & CASUALTY INSURANCE COMPANY,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**FILLMORE SPENCER LLC, and KEYSTONE INSURANCE AGENCY, INC.,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:22-cv-276-DAK-JCB<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

This matter is before the court on Defendant Keystone Insurance Agency's Motion for Judgment on the Pleadings [ECF No. 28], Defendant Fillmore Spencer's Motion for Partial Summary Judgment [ECF No. 31], and Plaintiff ALPS' Motion for Summary Judgment [ECF No. 40]. On March 27, 2023, the court held a hearing on the motions. At the hearing, Timothy J. Curtis, Kevin D. Hartzell, and Brooke H. McCarthy represented Plaintiff ALPS Property & Casualty, Richard S. Snow, and J. Craig Smith represented Defendant Fillmore Spencer LLC, and Jacob D. Barney and Jack Darrington represented Defendant Keystone Insurance. The court took the motions under advisement. After carefully considering the parties' memoranda and arguments as well as the facts and law relevant to the pending motions, the court issues the following Memorandum Decision and Order on the pending motions.

## BACKGROUND

This case is an insurance coverage dispute for a malpractice case against the law firm Fillmore Spencer. There are several layers of background relevant to the present dispute.

1.   Underlying Inside Lawsuit

In 2015, Fillmore Spencer represented Keystone Insurance Agency in a case against Inside Insurance regarding Keystone's interest in Inside.   After discovery closed in the case, Inside filed a Motion in Limine seeking exclusion of all Keystone's damages-related evidence under Utah Rule of Civil Procedure 26(d)(4) because Keystone had not disclosed a damages computation during discovery.   Inside also filed a Motion for Partial Summary Judgment, seeking judgment on all Keystone's claims because without damages-related evidence Keystone could not prove its damages.

The district court granted Inside's Motion in Limine under Rule 26 for failure to disclose damage theories during discovery, excluded Keystone's evidence regarding damages, and granted Inside's Motion for Partial Summary Judgment as to all Keystone's claims seeking damages. Keystone continued to have claims for declaratory relief and records inspection.

The Utah Supreme Court upheld the district court's ruling, finding "no error or abuse of discretion by the district court on any of the issues on appeal."   The Utah Supreme Court's decision stated: "Keystone's failure to provide any . . . computation or method for calculating damages is undisputed by the parties and ultimately led the district court to consider and apply the sanction provided by rule 26(d)(4)"; "Keystone's neglect is only pardonable if found to be 'harmless' or for 'good cause'"; "[t]he district court was therefore well within its discretion to find that Keystone failed to meet its burden to establish that its failure was harmless to Inside"; and "[t]he district court was again within its discretion to find no good cause to excuse Keystone's failure to provide a computation of damages."   *Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20 §§ 17-18, 20-21, 27.

2. Keystone Lawsuit

On November 16, 2020, Keystone filed suit against Fillmore Spencer, alleging causes of action for legal malpractice, breach of contract, and breach of fiduciary duty arising from Fillmore Spencer's representation of Keystone in the Inside Lawsuit. Keystone alleges that Fillmore Spencer negligently failed to timely disclose a computation of Keystone's damages, resulting in the dismissal with prejudice of its claims against Inside and the loss of hundreds of thousands of dollars. Keystone seeks at least $2 million in damages on its claims, plus punitive damages, prejudgment interest, and attorneys' fees and costs.

3. The Policy

ALPS issued a legal malpractice policy to Fillmore Spencer during the relevant time frame. The Policy's insuring agreement states, in relevant part:

> 1.1 COVERAGE
>
> Subject to the Limit of Liability, exclusions, conditions, and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that
>
> the Claim arises from an act, error, omission or Personal Injury that happened on or after the Loss Inclusion Date and the Retroactive Coverage Date set forth in Items 2 and 3 of the Declarations, and that the Claim arises from or is in connection with:
>
> > (a) An act, error or omission in Professional Services that were or should have been rendered by the Insured, or
> > (b) A Personal Injury arising out of the Professional Services of the Insured:
>
> ***
>
> 1.2.1 The Company . . . shall pay Claim Expenses in accordance with the terms of this Policy. The Company shall not have a duty to defend or to pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such

reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

The Policy defines "Damages" as "any monetary award by way of judgment or final arbitration, or any settlement; provided however, that Damages does not mean nor include: punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding." Therefore, the Policy covers (1) a Claim for (2) Damages (3) that are not sanctions. The parties agree that the Policy does not define the term "sanctions." But the parties appear to agree that the term typically means a penalty, coercive measure, or punishment resulting from the failure to comply with a law, rule, order, or other legal duty.

The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH," "[a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured[.]"

4. Notice

On May 23, 2017, Fillmore Spencer first provided ALPS with notice of circumstances in the Inside Lawsuit that could give rise to Keystone's Claim. ALPS investigated the Claim. ALPS corresponded with Fillmore Spencer on May 31, 2017, providing its reservation of rights with respect to the potential Claim under the Policy. ALPS remained in contact with Fillmore Spencer regarding the potential Claim's status, the pending appeal of the Inside Lawsuit, and any demands from Keystone. On February 21, 2020, Fillmore Spencer advised ALPS that Keystone had engaged counsel to pursue the claim against Fillmore Spencer. On March 12, 2020, ALPS

engaged counsel to represent Fillmore Spencer with respect to the Claim.

From March 2020 through November 2020, ALPS, Fillmore Spencer, and Keystone participated in pre-suit negotiations regarding potential resolution of the Claim. Those discussions did not resolve the Claim, and, on November 16, 2020, Keystone filed its complaint against Fillmore Spencer in the Keystone Lawsuit. By communications to Fillmore Spencer, dated January 7, 2021, and April 18, 2022, ALPS provided its supplemental reservation of rights regarding coverage for the Claim under the Policy. ALPS has defended, and continues to defend, Fillmore Spencer under the Policy in the Keystone Lawsuit.

5. Present Lawsuit

On April 21, 2022, while continuing to provide Fillmore Spencer with a defense in the Keystone Lawsuit, ALPS filed its Complaint in this coverage action, seeking a determination that the Policy does not cover the Claim because the Policy does not cover amounts allegedly lost because of sanctions. Because it believes there is no coverage under the Policy, ALPS also seeks a reimbursement of defense costs. ALPS filed its Complaint one day before Keystone and Fillmore Spencer were set to participate in a mediation of the Keystone Lawsuit. Fillmore Spencer and Keystone take issue with ALPS' timing, alleging that it ensured that the mediation would be unsuccessful. Fillmore Spencer answered the Complaint and filed Counterclaims for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and bad faith.

**DISCUSSION**

Each party has a motion before the court seeking dismissal of the other party's claims. The issues in the motions largely overlap. ALPS's Motion for Summary Judgment is the most comprehensive motion, seeking judgment on its claims and dismissal of Fillmore Spencer's

counterclaims. Fillmore Spencer's and Keystone's motions are in essence oppositions to ALPS's motion. Therefore, the court will address all three motions simultaneously.

I. ALPS' CLAIMS

ALPS seeks a judgment declaring that the Policy does not provide coverage for Fillmore Spencer's Claim and that ALPS has no duty to defend or indemnify Fillmore Spencer in the Keystone Lawsuit. ALPS also seeks reimbursement of the defense costs it has paid defending Fillmore Spencer in the Keystone Lawsuit. Fillmore Spencer and Keystone contend that there is both a duty to indemnify and a duty to defend the Claim. In addition, given the pendency of the Keystone Lawsuit in state court, the parties dispute whether these claims and counterclaims are ripe.

As an initial matter on the ripeness of the coverage issues, ALPS argues that the both the duty to defend and duty to indemnify are ripe. ALPS is currently incurring costs to defend Fillmore Spencer in the Keystone Lawsuit. There is an immediate, concrete controversy between ALPS and Fillmore Spencer with respect to the duty to defend. Under the circumstances there is a substantial interest in deciding these issues without undue delay. Therefore, the court agrees that the duty to defend is ripe. Typically, the duty to defend is broader than the duty to indemnify and a court might wait to address the duty to indemnify. Fillmore Spencer and Keystone argue for that approach. But ALPS argues that the Policy provides that it has no duty to defend and a right to reimbursement if there is no duty to indemnify. Because of this, ALPS asserts that determining the duty to defend requires the court to determine whether there is also a duty to indemnify. The interpretation of the term "sanctions" in the Policy does appear relevant to both the duty to indemnify and duty to defend, and there are no underlying facts regarding the "sanctions" issue that are in dispute or uncertain. Allowing the Keystone Lawsuit to conclude would not change

6

the analysis. Although Keystone makes persuasive arguments that the duty to defend in the Policy is broader than the duty to defend and the duty to defend and duty to indemnify are distinct under the Policy's provisions, because of the parties' disputes on that issue, the court will address both the duty to indemnify and duty to defend at this time.

  A. Duty to Indemnify

  In Utah, the duty to indemnify is narrower than the duty to defend and "relates to liability actually imposed on the insured for claims falling within the scope of coverage." *Aspen Specialty Ins. Co. v. Utah Local Gov'ts Trust*, 954 F. Supp. 2d 1311, 1316 (D. Utah 2013); *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins.*, 2011 UT 49, 266 P.3d 733, 735-36. The "duty to indemnify is a contractual one, and, accordingly, . . . is governed by the terms of the parties' contract." *Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48, ¶ 14, 27 P.3d 555, 559.

  "An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Alf v. State Farm Fire & Cas.*, 850 P.2d 1272, 1275 (Utah 1993). Courts in Utah interpret insurance policies, like any other contract, "to give effect to the intent of the parties as expressed by the plain language of the instrument itself." *Headwaters Res., Inc. v. Ill. Union Co.*, 770 F.3d 885, 891 (10th Cir. 2014). "If the policy language is clear and unambiguous, the court must construe it according to its plain and ordinary meaning." *Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co.*, 371 F. Supp. 3d 983, 993 (D. Utah 2019). The court "may not rewrite an insurance contract for the parties if the language is clear and unambiguous." *Alf*, 850 P.2d at 1275. Utah courts interpret insurance policies using general rules of contract interpretation—they give terms their usually accepted meanings, give effect to all provisions, and harmonize provisions with the policy as a whole. *Utah Farm Bureau Ins. v. Crook*, 1999 UT 47, ¶ 5. "Ambiguities are construed against the

drafter—the insurance company—and in favor of coverage." *Id.* ¶ 6.

However, "[c]ourts construe provisions that limit or exclude coverage strictly against the insurer," *Allegis Inv. Servs. V. Arthur J. Gallagher & Co.*, 371 F. Supp. 3d 983, 994 (D. Utah 2019). "Insurers 'may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.'" *Crook*, 1999 UT at ¶ 5 (quoting *Alf*, 850 P.2d at 1275).

Both parties argue that the language of the Policy unambiguously supports their interpretation. ALPS argues that the Keystone lawsuit seeks damages resulting from Fillmore Spencer's sanction in the Inside Lawsuit. Fillmore Spencer and Keystone argue that ALPS's interpretation improperly writes into the Policy language "resulting from" or "incident to" sanctions, which does not exist.

ALPS argues that Fillmore Spencer's Claim based on Keystone's Lawsuit is outside the coverage afforded by the Policy because the Policy's definition of covered "Damages" excludes coverage for sanctions. The Policy provides coverage only for sums "the Insured becomes legally obligated to pay as Damages." The Policy defines "Damages" as "any monetary award by way of judgment or final arbitration, or any settlement; provided, however, that Damages does not mean nor include: punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding."

ALPS claims the Policy does not cover any of Keystone's damages because they arise from the evidentiary sanction imposed by the district court in the Inside Lawsuit. In the Inside Lawsuit, the court barred Keystone from using any damages evidence under URCP 26 because Keystone did not disclose any damages theories prior to the discovery deadline. The court did not impose a

monetary sanction, it imposed the evidentiary bar provided in Rule 26. The plain language of the Policy states that sanctions are not included as damages. Therefore, Fillmore Spencer cannot get coverage for sanctions.

However, ALPS' interpretation of the Policy language asks the court to read phrases such as "resulting from" or "incident thereto" into the Policy. If the court in the Inside Lawsuit had fined Fillmore Spencer $100 for not submitting a damages calculation for Keystone before the discovery deadline, Fillmore Spencer could not make a claim under the Policy for the $100 sanction. If the court in the Inside Lawsuit had fined Keystone, as the party to the litigation, $100 for not submitting a timely damages calculation, and Keystone then made a claim against Fillmore Spencer for payment of that sanction, Fillmore Spencer could not make a claim under the Policy for payment Keystone's claim because it would be to pay for a sanction. In this case, however, the sanction at issue was an evidentiary bar and neither party is seeking coverage for the evidentiary bar. Keystone is seeking to be made whole for the damages it suffered as a result of or incident to the evidentiary bar. The Policy does not bar Fillmore Spencer from recovering damages resulting from or incident to a sanction. ALPS's interpretation of the "sanctions" exclusion to "Damages" attempts to avoid coverage for Keystone's compensatory damages by improperly adding language to and rewriting the Policy.

ALPS argues that the Inside Lawsuit was lost because of sanctions and the Keystone Lawsuit resulted from sanctions—that but for the sanction, the Keystone Lawsuit could not exist and Keystone seeks recovery for the sanction issued by the Inside Lawsuit's district court. But ALPS drafted the Policy which never states that the term "Damages" excludes damages "caused by," "arising from," or "existing as a result of" sanctions. In fact, there is not "but for" clause in the Policy's definition from "Damages" or language that excludes damages proximately caused by

9

sanctions. The court cannot rewrite the Policy to include the terms "resulting from" or "incident to." ALPS wrote the Policy and ALPS must follow the plain language of the Policy.

Although the Policy includes other exclusions to the definition of Damages and other exclusions generally, ALPS never argues that the other exclusions apply to the compensatory damages alleged in the Keystone Lawsuit. The Policy's exclusion for injunctive or declaratory relief provides that 'Damages" "does not mean nor include . . . injunctive, declaratory, or other equitable relief, or costs or fees incident thereto." This provision, which is contained in the same section defining damages, demonstrates that ALPS knew how to exclude damages incident to certain rulings. ALPS, therefore, could have drafted its Policy to exclude damages incident to sanctions, but it did not. By using the term "incident thereto," in the exclusions of some damages, it would render that language superfluous for the court to find that such language was not necessary pertaining to sanctions. Under basic rules of contract interpretation, the court cannot read the policy in a way that renders some language meaningless. The court, therefore, must read the "sanctions" language to exclude coverage for a claim that seeks the payment of the actual sanctions but not precluding coverage for a claim seeking compensatory damages that were caused by or incident to an evidentiary sanction. If ALPS does not intend to cover such damages, it must clearly identify that such damages are excluded. It did not do so in this Policy. This Policy excludes coverage for damages incident to declaratory, injunctive, or other equitable relief, but not incident to sanctions.

As a practical matter, Keystone is not seeking recovery of a sanction because—unlike a monetary sanction—there is nothing to recover from a sanction that excludes evidence. The Policy accounts for this paradox by defining "damages" as "any monetary award" except monetary awards that are "punitive, multiple, or exemplary damages, fines, sanctions, penalties, or

10

citations." To read sanctions as anything other than monetary sanctions leads to the absurd result ALPS requests—the exclusion of coverage for alleged compensatory damages caused by a court granting a motion for summary judgment which was in turn caused by the court granting a motion in limine which was caused by Fillmore Spencer's alleged negligence. Again, ALPS's interpretation ignores the plain language in the Policy that "Damages" are a "monetary award."

ALPS' broadened definition and application of "sanctions" would create the very ambiguity ALPS claims does not exist. Utah law is clear that ambiguous insurance policies are to "be construed in favor of coverage." *Fire Ins. Exch v. Oltmanns*, 2012 UT App 230, ¶ 6. An insurance policy "is ambiguous if it . . . has multiple meanings." *Crook*, 1999 UT 47, ¶ 6. This ambiguity exists when "the terms used to express the intention of the parties may be understood to have two or more plausible meanings." *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 15. A plausible meaning must be "reasonable in light of the language used . . . and must be based on the usual and natural meaning of the language used and may not be the result of a forced or strained construction." *Id.* That is, "words and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *Id.*

After analyzing the Policy as a whole, the court concludes the term sanctions in the Policy is unambiguous and does not apply to Keystone's request for compensatory damages resulting from a ruling that resulted from sanctions. ALPS' interpretation is implausible because it unreasonably adds "but for" or other proximate cause language to the Policy to broaden the term and scope of the term "sanctions." The commonly accepted meaning of "sanctions" does not include "damages proximately caused by sanctions." ALPS' interpretation is simply designed to restrict coverage. But to restrict coverage, ALPS must clearly restrict it with the language of the

11

Policy.

Even if the court were to deem ALPS' interpretation reasonable, then the Policy would be ambiguous because it would then be susceptible to multiple interpretations. In that situation, the court would need to construe that ambiguity in favor of coverage.

The cases ALPS cite to allegedly supporting its position do not in fact support ALPS's interpretation of "sanctions." *See Wesco Ins. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 337-39 (6th Cir. 2022). If Fillmore Spencer was seeking coverage for court-imposed attorneys' fees that were imposed as a sanction, this would be a distinctly different case. Fillmore Spencer does not seek coverage under the Policy for monetary sanctions imposed against it or Keystone. No such sanction exists. The district court in the Inside Lawsuit imposed an evidentiary sanction against Keystone for Fillmore Spencer's failure to disclose damages. There was no monetary sanction involved. Keystone now seeks compensatory damages caused by Fillmore Spencer's alleged neglect that led to the sanction. The Policy provides coverage to Fillmore Spencer in those circumstances because the compensatory damages Keystone seeks are meant to compensate it for Fillmore Spencer's alleged malpractice. It is a malpractice policy. In almost every instance, the attorneys will be alleged to have not followed some governing rule or law. That does not make the resulting damages sanctions.

In *Wesco Inc. v. Roderick Linton Belfance, LLP*, 39 F.4th 326 (6th Cir. 2022) involved a policy that excluded from the definition of damages "sanctions . . . and injuries that are a consequence of any of the foregoing." *Id.* at 335-36. ALPS' Policy does not include a clause similar to "injuries that are a consequence of any of the foregoing." *Id.* at 336. In addition, the sanctions in the *Wesco* case were monetary attorneys' fees that were categorically "sanctions." *Id.* at 337-39. ALPS claims that *Wesco* rejected an argument distinguishing between punitive and

12

compensatory sanctions. This case, however, involves the distinction between sanctions and compensatory damages resulting from an evidentiary sanction.

ALPS's cited cases also do not support its argument that the term sanction applies to every possible damage resulting from an evidentiary sanction. In *Clarendon Nat'l Ins. v. Foley & Bezek, LLP*, the policy excluded sanctions "and injuries that are a consequence of any of the foregoing." 2001 WL 1223486, at *4 (C.D. Cal. July 26, 2001). The court found that the law firm's attorneys' fees "accrued as a consequence of" the judge's sanctions against another firm. *Id.* These cases are distinguishable because of their significantly broader policy language. ALPS's Policy in this case has no such language. The Policy excludes "sanctions" from its definition of Damages, but it does not exclude injuries that are a consequence of sanctions.

This case is more akin to *Edward T. Joyce & Assocs., P.C. v. Prof'ls Direct Ins. Co.*, 816 F.3d 928 (7th Cir. 2016). In *Edward T. Joyce*, the Seventh Circuit rejected the district court's ruling that a professional-liability insurance policy's exclusionary term for "sanctions" precluded coverage. *Id.* at 931-32. There, the law firm obtained a monetary award for its clients and, believing it had satisfied its obligations, hired another firm to collect the award. *Id.* at 930. The clients disagreed and took the law firm to arbitration, where they succeeded on their claim for breach of fiduciary duty. *Id.* at 931. The arbitrator ordered the law firm to remit consultation fees it charged while assisting in the collection of the monetary award, to pay 25% of the other firm's fees, and to pay to offset the costs incurred in the arbitrations. The law firm's insurer refused to pay on the claim. The district court concluded the exclusion for sanctions applied because the arbitrator described the award as a "sanction." *Id* at 931. The Seventh Circuit disagreed, ruling that the exclusion for "sanctions" did not apply because all terms in the exclusionary clause "describe[d] penalties rather than compensatory remedies" and the arbitration

13

award was crafted as a remedy for the breach of fiduciary duty. *Id.* at 933.

The court agrees with Fillmore Spencer that the same reasoning and conclusion follows here. The Policy excludes a list of terms focused on penalizing wrongdoers. None of the terms describe compensatory damages. Keystone seeks a remedy not a sanction based on Fillmore Spencer's alleged negligence, and fiduciary and contractual breaches. Nothing in ALPS's Policy language precludes Fillmore Spencer from making a claim under the Policy for indemnification in the Keystone Lawsuit. Whether ALPS will ultimately need to indemnify Fillmore Spencer has not been determined because the Keystone Lawsuit is ongoing. But should Fillmore Spencer be found liable in the Keystone Lawsuit, nothing in the Policy precludes coverage.

Accordingly, based on the above reasoning, the court denies ALPS's Motion for Summary Judgment that it has no duty to indemnify Fillmore Spencer with respect to any loss it may incur in the Keystone Lawsuit. The court grants Keystone's Motion for Judgment on the Pleadings that ALPS's declaratory judgment claim asserting that the Policy precludes coverage for the Keystone Lawsuit fails as a matter of law.

B. Duty to Defend

An insurer has a duty to defend its insured if a "complaint alleges a risk within the coverage of the policy." *Benjamin v. Amica Mut. Ins.*, 2006 UT 37, ¶ 16. To determine if this duty exists, courts "compare the language of the insurance policy with the allegations in the complaint." *Id.* Further, courts must enforce unambiguous insurance policies according to their terms." *Utah Farm Bureau Ins. v. Crook*, 1999 UT 47, ¶ 6.

Keystone seeks compensatory damages against Fillmore Spencer for Fillmore Spencer's alleged legal malpractice, breach of contract, negligence, and breach of fiduciary duties. In its motion, ALPS makes no attempt to distinguish between covered and non-covered claims.

However, all of Keystone's claims are a "demand for money." Keystone requests a "monetary award by way of judgment" and, therefore, satisfies the Policy's general definition of "Damages." ALPS has not demonstrated that Keystone's claims are excluded from the definition of a covered claim. The court has also determined that the Policy does not preclude coverage for Keystone's request for compensatory damages resulting from the Inside Lawsuit. Therefore, Keystone's Complaint against Filmore Spencer contains claims requesting relief covered by the Policy. "If the duty to defend attaches to any claim alleged in a complaint, the insurer is obligated to undertake the defense of its insured for all claims raised in the complaint." *Harris v. Zurich Holding Co. of Am.*, No. 2:05-CV-482-TC, 2006 WL 120258, at *2 (D. Utah Jan. 17, 2006). The court concludes under the terms of the Policy that ALPS has a duty to defend Fillmore Spencer in the Keystone Lawsuit. Accordingly, the court denies ALPS's Motion for Summary Judgment on the duty to defend and grants Fillmore Spencer's Motion for Partial Summary Judgment and Keystone's Motion for Judgment on the Pleadings with respect to the duty to defend.

   C. ALPS's Claim for Reimbursement

  ALPS's Second Cause of Action seeks reimbursement from Fillmore Spencer for the Claim Expenses paid to defend Fillmore Spencer in the Keystone Lawsuit because ALPS claims it does not have a duty to indemnify or defend Fillmore Spencer with respect to the Keystone Lawsuit. The Policy states that ALPS has no duty to defend or pay Claim Expenses for "any Claim not covered" and ALPS has "the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims."

  Because the court has concluded that Fillmore Spencer's Claim based on the Keystone

15

Lawsuit is covered under the Policy and ALPS has a duty to defend Fillmore Spencer, ALPS is not entitled to reimbursement of claim expenses to defend Fillmore Spencer in the Keystone Lawsuit. Accordingly, the court denies ALPS's Motion for Summary Judgment on its Second Claim and grants Keystone's Motion for Judgment on the Pleadings to dismiss ALPS's claims as a matter of law.

## II. FILLMORE SPENCER"S COUNTERCLAIMS

Fillmore Spencer asserts Counterclaims for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and bad faith. Fillmore Spencer's Counterclaims are not ripe. Fillmore Spencer's Counterclaims are all based on ALPS alleged failures to zealously participate in mediation, settle the claims, and put Fillmore spencer's interest before ALPS's. The parties have different points of view regarding the propriety of ALPS's actions in these regards. But ALPS has and continues to provide Fillmore Spencer with a defense in the Keystone Lawsuit, the lawsuit was and remains a pending suit, and there has been no final disposition or judgment against Fillmore Spencer. Even viewing the facts in the light most favorable to Fillmore Spencer, Fillmore Spencer's Counterclaims are premature. No liability has been actually imposed on Fillmore Spencer with respect to Keystone's claim. In addition, many facts relevant to the Counterclaims could change during the pendency of the Keystone Lawsuit. Any possible causes of action arising from ALPS's alleged failure to settle and represent Fillmore Spencer's interests, therefore, have not accrued and should be brought after the Keystone Lawsuit concludes. Accordingly, the court dismisses Fillmore Spencer's Counterclaims without prejudice to being brought, if necessary, after liability, if any, is established against Fillmore Spencer in the Keystone Lawsuit.[1]

---

1. ALPS's evidentiary objections are moot given that the Counterclaims are premature.

## CONCLUSION

Based on the above reasoning, Defendant Keystone Insurance Agency's Motion for Judgment on the Pleadings [ECF No. 28] is GRANTED IN PART AND DENIED IN PART, Defendant Fillmore Spencer's Motion for Partial Summary Judgment [ECF No. 31] is GRANTED IN PART AND DENIED IN PART, and Plaintiff ALPS' Motion for Summary Judgment [ECF No. 40] is GRANTED IN PART AND DENIED IN PART. The Court concludes that, under the Policy, ALPS has a duty to defend and indemnify Fillmore Spencer in the Keystone Lawsuit, and that Fillmore Spencer's Counterclaims are premature and should be brought after liability, if any, is established against it in the Keystone Lawsuit. Because these determinations dispose of all the claims raised in this case, the court will issue judgment and close the case.

DATED this 14th day of June, 2023.

BY THE COURT

_____
DALE A. KIMBALL
United States District Judge